NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civ. No. 08-3512 (DMC) (JAD) |
| LUCENT TECHNOLOGIES, INC., ALCATEL, SA, ALCATEL-LUCENT HOLDINGS, INC., ALCATEL USA, INC., ALCATEL USA MARKETING, INC., ALCATEL USA SOURCING, INC. | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Defendants' motion for summary judgment pursuant Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Communications Workers of America, AFL-CIO ("CWA") cross-moves for summary judgment. No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, Defendants' motion is **granted** and CWA's cross-motion is **denied**.

### I. BACKGROUND[1]

CWA is a labor organization and signatory to a collective bargaining agreement ("CBA") with Defendant Lucent Technologies Inc. ("Lucent"). The CBA, effective from November 1, 2004

---

[1] The facts in the Background section have been taken from the parties' submissions.

until May 26, 2012 is titled the Installation Contract, CWA-24 (the "Installation Contract"). Pl.'s Br. 5. The Installation Contract is a successor agreement to a line of similar Installation Contracts entered into between Lucent and CWA starting in 1996, when Lucent spun off from AT&T, the original party to the Installation Contracts. Defs.' Br. 2. The Installation Contract contains a broad arbitration clause that states:

> If the National and the Company fail to settle by negotiation <u>any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder</u>, such differences shall (provided that such dispute is not excluded from arbitration by other provisions of this contract, and provided that the grievance procedures as to such dispute have been exhausted) be referred upon written demand of either party to an impartial arbitrator mutually agreeable to both parties.

Muscat Certif., Ex. (emphasis added).

On November 30, 2006, through an acquisition, Lucent became an indirect, wholly-owned subsidiary of Alcatel Lucent, a corporation organized under the laws of France. Defs.' Br. 2.[2] On December 31, 2007, Defendant Alcatel USA, Inc. was renamed Alcatel-Lucent Holdings Inc., also a named Defendant in this matter. Defs.' Br. 2-3. For the purposes of this litigation, Defendants Lucent, Alcatel-Lucent Holdings Inc., Alcatel USA Marketing, Inc. and Alcatel USA Sourcing, Inc. have admitted that they "'operated as a single employer, sharing common management, centralized control over labor relations and interrelated operations.'" Defs.' Br. 3.[3] The parties stipulated that this single employer admission extended to Grievance EX-24-07-006, the subject of the present

---

[2] The parties' briefs contain conflicting facts about the history of the acquisition/merger and the resulting corporate structure.

[3] Defendants Alcatel-Lucent Holdings Inc., Alcatel USA, Inc., Alcatel USA Marketing, Inc., and Alcatel USA Sourcing Inc., will hereafter be referred to collectively as the "Alcatel Subsidiaries."

dispute.  Defs.' Br. 3.  Despite this admission, Defendants contend that they remained separate corporate entities until November 1, 2008 when Alcatel USA Marketing, Inc. and Alcatel USA Sourcing, Inc. were merged into Lucent and subsequently renamed Alcatel-Lucent USA Inc. ("Alcatel-Lucent") Defs.' Br. 3.  Defendants deny that any party other than Lucent is subject to the terms of the Installation Contract.

Subsequent to the November 30, 2006 merger, and continuing through 2007, Defendants allege that both Lucent and the Alcatel subsidiaries continued to follow their pre-existing business models.  Defs.' Br. 4.  Lucent continued to sell and install Lucent legacy equipment, primarily using its CWA-represented Field Installation workforce as it had before, and the Altcatel subsidiaries continued to sell Alcatel legacy equipment and have it installed by non-union subcontractors.  Defs.' Br. 4.

Within one year following the acquisition of Lucent, CWA bargaining unit members covered by the Installation Contract claim they witnessed non-bargaining unit personnel wearing "Alcatel-Lucent" identification while performing installation work at client sites.  Pl.'s Br. 2.  When CWA brought this discovery to Lucent's attention, the Company responded that this work was being performed by a corporate subsidiary and therefore was not within the jurisdiction of the Installation Contract.  Pl.'s Br. 2.

In October 2007, the CWA filed Grievance EX-24-07-006 (the "Grievance") under the Installation Contract.  This executive level grievance, covers eighteen local grievances filed in various locations most of which pertain to the fact that Alcatel-Lucent "permitted non-bargaining unit members to perform bargaining unit work."  Defs.' Br. 9.  Defs.' Br. 8.  The Grievance alleges violations of CBA Articles 3, 4, 9, 12, 13, and 23.  Pl.'s Br. 4.  It also alleges violations of a local

memorandum called "Mode of Operations Agreement," a side letter agreement called the "Bahr-Williams" letter and a memorandum called "Workplace of the Future."[4]

Alcatel-Lucent issued a written denial of the Grievance on May 15, 2008 stating that:

> The work that is the subject of this grievance was not assigned to Lucent. It was presumably assigned to Alcatel USA. CWA's collective bargaining agreements are with Lucent Technologies, not Alcatel USA or any other Alcatel-Lucent affiliate. Accordingly, the underlying dispute is not with Lucent and it is not recognized under the collective bargaining agreement.

Defs.' Statement of Facts ¶ 26. "In response, CWA demanded in writing that Alcatel-Lucent arbitrate the Grievance. Upon Alcatel-Lucent's refusal to do so, CWA commenced the present action to compel arbitration. Defs.' Br. 9. Defendants note that "[p]rior to the filing of [the Grievance], the CWA never sought to arbitrate a grievance over subcontracting under the Installation Contract, or any of its predecessor contracts. Defs.' Br. 8.

## II. STANDARD OF REVIEW

"A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." Gaston v. U.S. Postal Serv., 319 Fed. Appx. 155, 157 (3d Cir. 2009). However, "[t]he judgment sought

---

[4] The Bahr-Williams letter was originally executed in 1986 between then CWA president Morton Bahr and AT&T's labor relations executive Ray Williams. Since 1992, the Bahr-Williams letter has been applicable to the Installation bargaining unit and is attached to every version of the Installation Contract. In the letter, the CWA and the Company agree not to contract out work normally performed by union members "if it would otherwise be performed by bargaining unit employees in job titles in a geographical commuting area (1) where layoffs of such employees are pending; or (2) where a layoff has already occurred and such laid off bargaining unit members retain recall rights and are available to perform such work." Defs.' Br. 26. CWA and Lucent, as successor to AT&T have agreed not to submit matters that arise under the Bahr-Williams letter to arbitration.

should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

Generally, "[a] party against whom relief is sought may move, with or without supporting affidavits, for summary judgment on all or part of the claim" at any time "until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b), (c). "[T]he burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Cartrett, 477 U.S. 317, 325 (1986). "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. (citing Fed. R. Civ. P. 56(c)).

> When a motion for summary judgment is properly made and supported, [by contrast,] an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). If "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Indeed, "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." See Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Rule 56(e) permits "a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Id. (quoting Lujan

v. National Wildlife Fed'n, 497 U.S. 871, 888-89 (1990)). "It is clear enough that unsworn statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are the unsupported allegations of the pleadings." Schoch, 912 F.2d at 657.

### III. RELEVANT LAW

It is well-established that there is a "strong federal policy in favor of resolving labor disputes through arbitration." Rite Aid of Pa., Inc. v. United Food & Commercial Workers Union, Local 1776, 595 F.3d 128 (3d Cir. 2010). Thus, if a collective bargaining agreement contains an arbitration clause, there is a presumption in favor of arbitration that is rebutted only "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." E.M. Diagnostic Sys., Inc. v. Local 169, 812 F.2d 91, 95 (3d Cir. 1987) (citation and internal quotation marks omitted). In the face of a broad arbitration clause, and where there are no "express provisions excluding a particular grievance from arbitration, only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." Id. at 95. Yet, because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Id. at 94 (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)).

When determining whether a particular grievance is arbitrable, "'[t]he courts . . . have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is a particular language in the written instrument which will support the claim.'" Id. at 95 (quoting Steelworkers v. American Mfg. Co., 363 U.S. 564, 568 (1960).

A court may look to the underlying merits of the claim, however, "where the claim's merits and its arbitrability are inextricably intertwined." Rite Aid, 595 F.3d at 131.

In this Circuit, a district court's determination as to arbitrability is focused on three inquiries: "(1) Does the present dispute come within the scope of the arbitration clause? (2) does any other provision of the contract expressly exclude this kind of dispute from arbitration? (3) is there any other "forceful evidence" indicating that the parties intended such an exclusion?" E.M. Diagnostic, 812 F.2d at 95.

### III.  DISCUSSION

Defendants move for summary judgment to dismiss the Complaint in its entirety because it fails to set forth plausible grounds to establish that Defendants agreed to arbitrate the dispute. CWA cross-moves for summary judgment arguing that the Alcatel Subsidiaries are subject to the Installation Contract and that the grievance falls within the scope of the collective bargaining agreement and must therefore be arbitrated.

The parties dispute whether the Alcatel Subsidiaries are subject to the collective bargaining agreement such that they would have to follow the terms of that agreement. Defendants submit that only Lucent, who is a signatory to the Installation Contract and is named in the definition section of the Contract as "the Company" is bound by its terms. In response, CWA argues that because Defendants have conceded that Lucent, Alcatel-Lucent Holdings Inc., Alcatel USA Marketing, Inc. and Alcatel USA Sourcing, Inc. "'operated as a single employer, sharing common management, centralized control over labor relations and interrelated operations,'" Lucent's bargaining agreement covers the other entities as well. Furthermore, CWA argues that because "the subsidiaries within

Alcatel-Lucent lack an arm's length relationship, sharing operations, management and labor relations . . . when one of the Former Alcatel Subsidiaries was hired to perform installation work, Lucent could have demanded that the work be performed by bargaining unit members." Pl.'s Opp'n Br. 5-6. CWA further argues that even if the Court finds that the Former Alcatel Subsidiares not bound by the Installation Contract, the work at issue in the Grievance is still bargaining unit work because "[t]he work is installation of communication equipment–specifically, equipment that CWA-represented installers typically install." Pl.'s Opp'n 8. CWA notes that this type of installation would remain bargaining unit work even if CWA-represented installers had never installed the products in question because "[c]ommunication equipment installation by its nature, changes continually." Pl.'s Opp'n 8.

There is competing case law regarding whether the Court or the arbitrator must adjudicate the issue of whether a defendant is bound by the CBA. In E.M. Diagnostics, the Third Circuit expressly found that "we must not address the merits of the grievance 'even if it appears to the court to be frivolous.'" 812 F.2d at 97 (quoting AT&T Techs. v. Communs. Workers of Am., 475 U.S. 643 (1986)). There, the court allowed a grievance to proceed to arbitration, despite the defendant's argument that its right to subcontract was so clear on the face of the agreement that there was no need for arbitration. Id. The court reasoned that to accept defendant's argument would be "but another way of saying that the Union's grievance is frivolous" and that to do so would be to improperly usurp the role of the arbitrator. Id. ("Decisions on the merits, whether easy or difficult, must be left to the arbitrator.").

Since E.M. Diagnostics has been decided, Third Circuit case law on whether to address the merits when determining arbitrability has shifted. In a recent decision, the Court found that where

the scope of an arbitration clause is limited to matters "regarding the agreement or its construction" it becomes "necessary to interpret the agreement in order to properly determine the question of arbitrability." Rite Aid of Pa. v. United Food & Commerical Workers Union, Local 1776, 595 F.3d 128, 136-37 (2010) ("'[W]e must determine whether the parties agreed to arbitrate this dispute, and we cannot avoid that duty because it requires us to interpret a provision of a bargaining agreement,' even if we trench to some extent upon the merits." (quoting Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 209 (1991))).

Other courts have found that the question of whether a party is bound by a CBA is a threshold issue that must be resolved prior to reaching the arbitrability question. The Seventh Circuit, for instance, has remarked that "[w]e think it beyond peradventure that only disputes between the parties to the agreement, that is, the signatory companies and the Union in its capacity as representative of their employees, are arbitrable under the agreement." R.J. Distrib. Co. v. Teamsters, Chauffeurs & Helpers Local Union No. 627, 771 F.2d 211, 214 (7th Cir. 1985). There, the court found that a company should not be compelled to arbitrate a grievance because the Union was asserting the interests of employees of a company that was not a signatory to the agreement. Id. at 213-215. In making that determination, the court noted:

> [W]e [do not] need to interpret any substantive provision of the agreement to decide whether the dispute is arbitrable. We need only look to the introductory paragraph of the agreement which makes clear that the agreement was entered into by the Union and the undersigned companies. Pabst was not a signatory to the agreement. It follows that Pabst employees were not covered by the agreement and have no standing to enforce its arbitration provisions.

Id. at 215. The court never reached the question of arbitrability—once it found that a party was not a signatory to the agreement, the issue was moot.

Similarly, in a case where a union was seeking to enforce an arbitration award, the court found that "the defendant can be held bound by the decision of the arbitrator only if it is established that it was a party to the collective bargaining agreement with the plaintiff." Int'l Union of Operating Engineers, Local 542 v. Evans Asphalt Co., Inc., 721 F. Supp. 73, 76 (M.D. Pa. 1989). There, the court recognized that the question of whether a party is subject to a collective bargaining agreement is a threshold issue that must be left to the federal courts, not an arbitrator. Id. ("[T]he primary issue we must address in this case is whether the defendant is a different corporate entity than the Evans Asphalt which was a party to the collective bargaining agreement with the plaintiff. If this issue is answered in the affirmative, then the defendant cannot be held bound by the arbitrator's award.")

Given the case law, this Court believes that it must first decide whether the Installation Contract applies to the Alcatel Subsidiaries before it can reach the question of arbitrability. On its face, it is clear that the Installation Contract applies only to Lucent because only Lucent is named as a party to the contract. Thus, in order for the Alcatel Subsidiaries to be bound by the Installation Contract, the Court must determine whether they are a single employer with Lucent. This is because "[w]hen two entities are found to be a single employer, one entity's collective bargaining agreement covers the other entity as well, provided that the two entities' employees constitute a single appropriate bargaining unit." Stardyne, Inc. v. NLRB, 41 F.3d 141, 144 (3d Cir. 1994). To constitute a single employer the entities must share "interrelations of operations, common management, centralized control of labor relations and common ownership." Id. at 145. In order to determine whether the entities' employees constitute a single appropriate bargaining unit, the Court must consider factors such as "operational integration, geographic proximity, common supervision, similarity in job function and degree of employee interchange." Shoukry v. Parsons Corp., Civ. No.

07-3094 (WJM), 2008 U.S. Dist. LEXIS 48034, at *7 (D.N.J. June 23, 2008) (noting that even when there is "a basis for a finding of single employer status, the collective bargaining agreement could not be enforced against [the non-signatory] unless it could also be determined that the employees of [the two entities] constitute a single appropriate bargaining unit").

As discussed above, Defendants have already stipulated to the satisfaction of the four "single employer" criteria. Yet, there is nothing in the record to establish that the employees constitute a single appropriate bargaining unit. CWA argues that this element of the single employer determination should not apply in this case because Alcatel historically used subcontractors to perform installation work and so the former Alcatel Subsidiaries do not have an installation workforce on whom to apply this test. Pl.'s Opp'n Br. 6. CWA offers no legal support for its position that the second factor of the test can be disregarded in this circumstance. Because there is no evidence that the single appropriate bargaining unit factor has been satisified, the Court must rule that the Installation Contract does not apply to the Alcatel Subsidiaries. Accordingly, the Alcatel Subsidiaries may not be compelled to arbitrate the Grievance.

CWA argues that even if the Alcatel Subsidiaries are not subject to the Installation Contract, Lucent must still arbitrate the Grievance because the dispute involves the subcontracting of bargaining unit work, a matter within the zone of interests protected in the Installation Contract. The Court finds this argument unpersuasive. Based on the facts in the record, and as presented to the Court during oral argument on March 10, 2011, it is the Court's understanding that the Alcatel Subsidiaries were subcontracting work, <u>not</u> Lucent. While subcontracting of bargaining unit work by Lucent may fall within the scope of the arbitration clause, the subcontracting of work by a non-signatory to the Installation Contract surely does not. See <u>R.J. Distrib. Co.</u>, 771 F.2d at 214 ("As a general rule, if the

contract is susceptible of an interpretation that the dispute is arbitrable, arbitration should be ordered. But if the court is positively assured that the contract is not susceptible of such an interpretation, arbitration cannot be ordered."). Therefore, the Court finds that Lucent may not be compelled to arbitration for acts that it did not itself commit.

## IV. **CONCLUSION**

For the reasons stated, Defendants' motion seeking summary judgment is **granted** and CWA's cross-motion is **denied**.

                                                 S/ Dennis M. Cavanaugh
                                                 Dennis M. Cavanaugh, U.S.D.J.

Date: March 11, 2011
Orig.: Clerk
cc: All Counsel of Record
     Hon. Joseph A. Dickson, U.S.M.J.
     File